UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| STEVEN SURABIAN and RICHARD SURABIAN,<br><br>Plaintiffs,<br><br>v.<br><br>EMC MORTGAGE CORPORATION, WELLS FARO BANK, NATIONAL ASSOCIATION as TRUSTEE for the CERTIFICATEHOLDERS of STRUCTURED ASSET MORTGAGE INVESTMENTS II INC., GREENPOINT MTA TRUST 2005-AR2, MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2005-AR2, DAVID A. SIMPSON, P.C. and KELLAM & PETITT, P.A.,<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)  Civil Action No. 1:12-cv-11488-JCB |

**MEMORANDUM OF DEFENDANTS WELLS FARGO BANK, N.A., AS TRUSTEE FOR THE CERTIFICATEHOLDERS OF STRUCTURED ASSET MORTGAGE INVESTMENTS II INC., GREENPOINT MTA TRUST 2005-AR2, MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2005-AR2 AND EMC MORTGAGE CORPORATION IN SUPPORT OF MOTION TO DISMISS COMPLAINT**

Pursuant to Fed. R. Civ. P. 12(b)(1), 12(b)(6) and 12(b)(9), Defendants Wells Fargo Bank, N.A. as Trustee for the Certificate holders of Structured Asset Mortgage Investments II, Inc., Greenpoint MTA Trust 2005-AR2, Mortgage Pass Through Certificates, Series 2005-AR2 ("Wells Fargo, Trustee") and EMC Mortgage Corporation ("EMC") move to dismiss the Verified Complaint on grounds that: 1) this Court does not have subject matter jurisdiction to address the plaintiffs' claims; 2) plaintiffs are collaterally stopped from raising the claims at issue in the Complaint; 3) the plaintiffs have failed to state a claim upon which relief may be

granted; 4) plaintiffs have failed to plead fraud with particularity as required by the Federal Rules of Civil Procedure; and 5) plaintiffs' claims are barred by the applicable statute of limitations.

## I. INTRODUCTION

This is a suit brought by the former owners of a piece of real property located at 810 Tarpon Drive, Wilmington, North Carolina (the "Property") claiming that the 2009 foreclosure sale of the Property was defective. The plaintiffs ask this court to void the foreclosure and award them compensatory, punitive and emotional distress damages. A close reading of the inartfully drafted Complaint shows that the plaintiffs are asking this court to overturn two orders of the North Carolina state court that ordered and then affirmed the foreclosure of the Property. The plaintiffs contend that the note and deed of trust that were at issue in the North Carolina proceedings were a fraud because the notary stamp and seal did not appear on every page of the documents. The North Carolina courts were not persuaded by the evidence presented by the plaintiffs and ordered the foreclosure of the Property. Plaintiffs seek another bite at the apple and ask this Court to undue the North Carolina Orders. For all of the reasons set forth below, the plaintiffs' Complaint should be dismissed.

## II. FACTUAL ALLEGATIONS

Although the factual underpinnings of the Complaint are not easy to decipher, the plaintiffs are essentially claiming that the foreclosure conducted by defendant David A. Simpson, P.C., Substitute Trustee under a deed of trust granted by the plaintiffs was invalid because the $280,000 note and deed of trust at issue did not contain the plaintiffs actual signature and lacked a notary stamp on every page. Complaint at ¶ 16 and <u>Exhibit M.</u> Plaintiff Steven Surabian appeared in North Carolina to challenge the foreclosure and produced "evidence" that the note

and deed of trust did not contain his signature. Complaint at ¶ 16 and Exhibit M. After a hearing on July 15, 2009, where plaintiff Steven Surabian contested the validity of the note and deed of trust, the court ordered that the $280,000 note and deed of trust was held by Wells Fargo, Trustee and evidenced a debt owed by plaintiffs. Complaint at ¶ 17 and Exhibit N. The court held that the note was in default and that the deed of trust authorized the right to foreclose under a power of sale. Complaint at Exhibit N. The court authorized the substitute trustee to proceed with the foreclosure of the Property. Complaint at Exhibit N. The Order also noted that Mr. Surabian intended to appeal the Court's Order authorizing the foreclosure of the Property. Complaint at ¶ 18 and Exhibit N. Mr. Surabian subsequently filed an appeal of the Order to the Superior Court. Complaint at ¶ 19 and Exhibit P. The Superior Court scheduled the appeal for a hearing on August 3, 2009. Complaint at ¶ 20 and Exhibit Q. Steven Surabian attempted to attend the August 3, 2009 hearing but could not travel to North Carolina because of weather related delays. Complaint at ¶¶ 22-24. The court held the hearing without Mr. Surarbian. Complaint at ¶ 27. The Superior Court Judge, after a thorough review of the evidence, upheld the Order (Exhibit N) authorizing the foreclosure. Complaint at ¶ 27 and Exhibit V. The plaintiffs filed a Motion to Vacate Judgment and Order. Complaint at ¶28 and Exhibit R. The plaintiffs do not allege that they sought any further appellate review of the Superior Court Order. Complaint generally. The Property was subject to a foreclosure on August 5, 2009. Complaint at Exhibit W.

### III. ARGUMENT

#### A. The Motion to Dismiss Standard.

Pursuant to Fed. R. Civ. P.12(b)(1), a defendant may move to dismiss an action based on lack of federal subject matter jurisdiction. Because federal courts are considered courts of limited

3

jurisdiction, "federal jurisdiction is never presumed." <u>Viqueira v. First Bank</u>, 140 F.3d 12, 16 (1 Cir., 1998). Instead, " 'the party invoking the jurisdiction of a federal court carries the burden of proving its existence.' " <u>Murphy v. United States</u>, 45 F.3d 520, 522 (1 Cir.), *cert. denied,* 515 U.S. 1144, 115 S.Ct. 2581, 132 L.Ed.2d 831 (1995) (quoting <u>Taber Partners, I v. Merit Builders, Inc.</u>, 987 F.2d 57, 60 (1 Cir.), *cert. denied,* 510 U.S. 823, 114 S.Ct. 82, 126 L.Ed.2d 50 (1993)). Once a defendant challenges the jurisdictional basis for a claim under Rule 12(b)(1), the plaintiff bears the burden of proving jurisdiction. <u>Thomson v. Gaskill</u>, 315 U.S. 442, 446, 62 S.Ct. 673, 86 L.Ed. 951 (1942); <u>Aversa v. United States</u>, 99 F.3d 1200, 1209 (1 Cir., 1996); <u>Murphy</u>, 45 F.3d at 522.

Moreover, where the complaint attaches exhibits, those exhibits are part of the allegations of the complaint for purposes of a motion to dismiss. <u>Blackstone Realty LLC v. FDIC</u>, 244 F.3d 193, 195 n.1 (1st Cir. 2001) (citing Fed. R. Civ. P. 10(c)). If the allegations in the complaint conflict with the exhibits, then the exhibits control. <u>Clorox Co. v. Procter & Gamble Commercial Co.</u>, 228 F.3d 24, 32 (1st Cir. 2000) (internal citation omitted) ("It is a well-settled rule that when a written instrument contradicts allegations in the complaint to which it is attached, the exhibit trumps the allegations").

With regards to a motion under Rule 12(b)(6), the Court may grant a motion to dismiss for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009) (quoting <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 570 (2007)). The Rule 8 pleading standard "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." <u>Iqbal</u>, 556 U.S. at 678 (citing <u>Twombly</u>, 550 U.S. at 555). "The make-or-break standard . . . is

4

that the combined allegations, taken as true, must state a plausible, not a merely conceivable, case for relief." Rodriguez-Ramos v. Hernandez-Gregorat, 685 F.3d 34, 40 (1st Cir. 2012) (quoting Sepúlveda–Villarini v. Dep't of Educ. of P.R., 628 F.3d 25, 29 (1st Cir. 2010)).

> B. **The Rooker-Feldman Doctrine Deprives This Court Of Subject Matter Jurisdiction To Review The North Carolina State Court Orders At Issue In The Plaintiffs' Complaint**
>
> 28 U.S.C. §1257 vests the United States Supreme Court with exclusive 'jurisdiction over appeals from state court judgments.' In light of that exclusive jurisdictional grant, '[t]he Rooker- Feldman doctrine prevents the lower federal courts from exercising jurisdiction over cases brought by state court losers challenging state-court judgments rendered before the district court proceedings commenced.' The Rooker-Feldman doctrine, however, is confined to 1.) cases brought by state court losers; 2.) complaining of injuries caused by state court judgments; 3.) rendered before the district court proceedings commenced; and 4.) inviting district court review and rejection of those judgments.

Silva v. Massachusetts, 351 Fed. Appx. 450, 454 (1st Cir. 2009). A review of the Complaint and the exhibits attached thereto reveals that each of the elements of the Rooker-Feldman doctrine are satisfied and that this court lacks subject matter jurisdiction to address the plaintiffs' claims.

### 1. The Plaintiffs Lost In The North Carolina State Court

The allegations of the Complaint and the exhibits attached thereto clearly demonstrate that the plaintiffs were on the losing side of two North Carolina state court orders. The plaintiffs allege that defendant Kellam & Pettit wrote to them alleging that a $280,000 note secured by the Property was in default. Complaint at ¶ 12. A court proceeding was commenced to obtain authority to commence a foreclosure under the statutory power of sale contained in the deed of trust. Complaint at Exhibit H. Plaintiff Steven Surabian appeared and challenged the validity of his signature on the note and deed of trust. Complaint at ¶ 16 and Exhibit M. Despite the plaintiff's objection, an Order issued authorizing the foreclosure of the Property. Complaint at ¶ 17 and Exhibit N. The plaintiffs appealed the Order to the Superior Court. Complaint at ¶ 18

5

and 19 and Exhibit O and Exhibit P.  The Superior Court affirmed the Order authorizing the foreclosure.  Complaint at ¶ 27 and Exhibit V and W.   The foreclosure occurred on August 5, 2009.  Complaint at ¶ 27 and Exhibit V and W.  The plaintiffs filed a Motion to Vacate Order and Judgment.  Complaint at ¶ 28 and Exhibit R.  The plaintiffs did not take any additional steps to obtain further appellate review.

Because it is clear from the facts alleged by the plaintiffs and the documents attached to the Complaint that the Surabians were the unsuccessful parties in the state court foreclosure proceedings, the first prong of the Rooker-Feldman doctrine is satisfied.

### 2. This Federal Court Action Complains of Injuries Caused By The State Court Orders

A review of the Complaint reveals that the plaintiff's federal court action complains of injuries caused by the state court orders.  In determining whether the Rooker-Feldman doctrine applies in a given case, it is appropriate to compare the core issues raised in the state court action with those raised in the federal court action.  *See* Puerto Ricans for Puerto Rico Party v. Dalmau, 544 F.3d 58, 68 (1st Cir. 2008).

In the state court action, the plaintiffs defended against the right to foreclose by claiming that the note and deed of trust were fraudulent because the notary stamp did not appear on every page of the documents.[1]  Complaint at ¶ 16 and Exhibit M.  The plaintiffs do not assert any new independent allegations in the federal Complaint.  The Complaint merely recites the time line of

---

[1] This is not the first time that the plaintiffs have made this novel argument.  Plaintiffs have attempted at least three other cases in this jurisdiction using the same failed argument.  *See* Surabian v. Residential Funding Company, LLC, United States District Court for the District of Massachusetts, Civil Action No. 10-CV-10546-NG, Surabian v. HSBC Bank USA, NA, United States District Court for the District of Massachusetts, Civil Action No. 10-10643-RZW, and Surabian v. HSBC Bank, NA as Trustee for Sequoia Mortgage Trust 2004-6, United States District Court for the District of Massachusetts, Civil Action No. 11-10053-DPW.  All of these cases were dismissed by the federal court.  Attached hereto as Exhibit A is a copy of Judge Woodlock's Memorandum and Order in Civil Action. 11-10053.  The court make take judicial notice of this decision in accordance with Rule 201 of the Federal Rules of Evidence.

the North Carolina proceedings and asks the court to void the North Carolina orders. The Complaint alleges that the plaintiffs' harm occurred when the North Carolina Superior Court affirmed the order authorizing the foreclosure of the plaintiffs' property. Complaint at ¶¶ 25-27. Because the alleged harm was caused by the state court orders that plaintiffs seek to void, the second prong of the Rooker-Feldman doctrine is satisfied.

### 3. The District Court Action Was Commenced After The State Court Judgment Was Rendered

In determining whether the state-court judgment was rendered before the federal court action was commenced, case law directs that a "state court judgment is sufficiently final for operation of the Rooker-Feldman doctrine when the state court proceedings have ended." Silva at 455 citing Exxon Mobil Corp. v. Saudi Basic Industries Corp., 544 U.S. 280 at 291.

The Complaint shows that the state court Order the plaintiffs seek to void was rendered on August 5, 2009. Complaint at Exhibit V. The plaintiffs do not allege that they exercised any further rights of appeal.[2] Plaintiffs had the ability to appeal the Superior Court Order to the Court of Appeals of North Carolina but fail to allege that they did so. The plaintiffs' failure to timely appeal the Order affirming the foreclosure of the property ended the state court action for purposes of the Rooker-Feldman doctrine well before this action was filed.

---

[2] In Re Foreclosure of Real Property for $143,600.00, 156 N.C.App. 477 (2003) reveals that the Superior Court Order affirming the foreclosure of the property was an appealable order. Id. at 482. In accordance with Rule 3 of the North Carolina Rules of Appellate Procedure, the plaintiffs had 30 days from their receipt of the Order to file a notice of appeal.

### 4. The Plaintiffs Ask This Court To Review And Void The State Court Orders

In their federal Complaint, the plaintiffs ask the court to "order that the $32,000 Note[3] was paid in full and void all other notes that anyone attached the Surabians notarized signature to." Complaint at p. 4. In order for the federal court to grant the relief that the plaintiff seeks, the District Court would have to declare that the North Carolina court incorrectly validated the debt owed by the plaintiffs. The Rooker-Feldman doctrine prohibits the District Court from doing this. *See* Wilson v. Shumway, 264 F.3d 120, 123-126 (1st Cir. 2001); Sheehan v. Marr, 207 F.3d 35, 39-40 (1st Cir. 2000); Hill v. Town of Conway, 193F.3d 33, 39-40 (1st Cir. 1999) (Rooker-Feldman doctrine precludes the District Court from making adjudication which would "effectively reverse the state court decision or its holding") quoting Snider v. City of Exelsior Springs. Missouri, 154 F.3d 809, 811-812 (8th Cir. 1998).

Plaintiffs had an effective means to obtain review of the state court decisions authorizing the foreclosure of their Property. Specifically, they had the ability to seek review of the decisions to the Court of Appeals of North Carolina and further through a petition for a Writ of Certiorari to the United States Supreme Court. Plaintiffs failed to exhaust their appellate avenues and cannot remedy that failure by collaterally attacking the final orders under the guise of this action.

As a result, the plaintiffs Complaint should be dismissed as any remedy provided by this court would violate the principles of the Rooker-Feldman doctrine.

### C. The Principle Of Collateral Estoppel Requires Dismissal Of The Complaint

The principle of collateral estoppel, or issue preclusion, bars relitigation of any factual or legal issue that was *actually* decided in previous litigation between the

---

[3] The Complaint refers to both a $32,000 Note and a $280,000 Note. It is clear from the documents attached to the Complaint that the $280,000 Note and Deed of Trust were the subject of the North Carolina Orders that the plaintiffs seek to void. *See* Complaint and exhibits generally.

> parties, whether on the same or a different claim. When there is an identity of the parties in subsequent actions, a party must establish four essential elements for a successful application of issue preclusion to the later action: (1) the issue sought to be precluded must be the same as that involved in the prior action; (2) the issue must have been actually litigated; (3) the issue must have been determined by a valid and binding final judgment; and (4) the determination of the issue must have been essential to the judgment. An issue may be actually decided even if it is not *explicitly* decided, for it may have constituted, logically or practically, a necessary component of the decision reached in the prior litigation.

Grella v. Salem Five Cent Sav. Bank, 42 F.3d 26, 30 (1st Cir. 1994). In this case, all four elements of collateral estoppel are present necessitating the dismissal of the plaintiffs' Complaint.[4]

To invoke collateral estoppel, the parties in the current action ordinarily must be the same parties as in the prior action. *See* Grella v. Salem Five Cent Sav. Bank, 42 F.3d 26, 30 (1st Cir. 1994). "The most common exception to this general principle is where 'there is privity' between a party to the second case and a party who is bound by an earlier judgment". State Police for Automatic Retirement Association v. Difava, 164 F.Supp.2d 141, 149 (D.Mass. 2001). "Application of the tern privity 'represents a legal conclusion that the relationship between the one who is a party on the record and the non-party is sufficiently close to afford application of the principle of preclusion.'" Id. There is a sufficiently close relationship between the party in

---

[4] A conflict of law analysis is not necessary to determine whether the law of Massachusetts or North Carolina applies to the collateral estoppel argument. The first step in a choice of law analysis is to determine whether there is a conflict between the substantive laws of the interested jurisdictions. Millipore Corp. v. Travelers Indemnity Co., 115 F.3d 21, 29 (1st Cir. 1997). A review of relevant case law shows that there is no appreciable difference between the substantive law of Massachusetts and North Carolina with respect to issue preclusion. *See* Grella v. Salem Five Cent Sav. Bank, 42 F.3d 26, 30 (1st Cir. 1994) and Johnson v. Smith, 97 N.C. App. 450, 452 (1990) (under North Carolina law, collateral estoppel applies where: "1) the issues to be concluded must be the same as those involved in the prior action; 2) in the prior action, the issues must have been raised and actually litigated; 3) the issues must have been material and relevant to the disposition of the prior action; and 4) the determination made of those issues in the prior action must have been necessary and essential to the resulting judgment." Where there is no conflict because the laws of the two jurisdictions, a conflict of law analysis is not necessary because the outcome would be the same under the substantive law of either jurisdiction. Lambert v. Kysar, 983F.2 1110, 1114 (1st Cir. 1983).

9

the North Carolina case – David A Simpson, P.C. Substitute Trustee – and the parties in this case -- Wells Fargo, Trustee and EMC – to invoke the principle of collateral estoppel.

As is evident from the documents attached to the Complaint, Wells Fargo, Trustee was the holder of the note and deed of trust that were at issue in the North Carolina litigation. Complaint at Exhibits H, K, N and V.  Although the holder of the note and deed of trust are not required to be a party to the underlying litigation seeking to exercise the statutory power of sale, it is Wells Fargo, Trustee that benefited from the favorable Order authorizing the foreclosure. As such, Wells Fargo, Trustee shares a sufficiently close legal relationship with the party in the North Carolina action to benefit from the application of issue preclusion.

EMC stands in similar shoes and should also benefit from the application of issue preclusion.  EMC is the loan servicer for Wells Fargo, Trustee.  As the servicer for Wells Fargo, Trustee, EMC acts on behalf of Wells Fargo, Trustee.  Complaint at Exhibit A, F and G.  The roles of the servicer, the trustee under the deed of trust and the lender are inextricably interwined. EMC and the trustee under the deed of trust act for the benefit of Wells Fargo, Trustee as the holder of the note and mortgage.  EMC, therefore, shares a close legal relationship to the party in the North Carolina case and should enjoy the benefit of the issue preclusion.

Even if this court finds that there is a lack of privity between the party in the North Carolina action and the defendants here, they can invoke defensive issue preclusion. "Defensive use of collateral estoppel precludes a plaintiff from re-litigating identical issues by merely switching adversaries." Parkland Hosiery Co., Inc. v. Shore, 439 U.S. 322 (1979).  Since plaintiffs have already litigated the validity of the note and deed of trust with one of the co-defendants in this suit, they cannot litigate it again in this court against other defendants.

All of the remaining elements necessary for the application of collateral estoppel are satisfied.  Although the Complaint is not easy decipher, it is apparent from a review of the Compliant and the exhibits as a whole that the plaintiff continues to seek legal redress for what he believes is a fraudulent note and deed of trust.  The validity of the note and deed of trust were sufficiently litigated in the North Carolina action so as to bar the re-litigation of the issue.  The plaintiffs here appeared and presented evidence in support of their position that the note and deed of trust were fraudulent but they failed to convince the Clerk or the Superior Court Judge of their position.  Complaint at ¶ 16 and Exhibit M.  The Clerk made a determination that the note and deed of trust were valid and enforceable.  Complaint at Exhibit N.  The validity of the note and deed of trust were at the crux of the North Carolina court's inquiry.  Both the Clerk's Order and the Superior Court Order held that the note and deed of trust were valid, enforceable and in default.  Complaint at Exhibit N and V.  IThe plaintiffs appealed but failed to appear for the appellate proceeding.  Complaint at Exhibit V.  The Superior Court in reviewing the Clerk's Order reviewed "the file, the evidence and the affidavits provided" and affirmed the Clerk's Order authorizing the foreclosure.   Complaint at Exhibit V.  Plaintiffs had the opportunity and the incentive to litigate the validity of the note and deed of trust in the North Carolina court, and they did so.  They were unsuccessful in that challenge but cannot re-litigate that claim here.  *See* Parkland.

### D. The Plaintiffs' Claims Are Time-Barred

A motion to dismiss under Fed. R. Civ. P. 12(b)(6) lies against a complaint which shows on its face that the statute of limitations has run prior to the date the action was commenced. Rodi v. Southern New England School of Law, 389 F.3d 5, 17 (1st Cir. 2004).   Tort actions must

11

be commenced within three years after the cause of action accrues.[5]  Mass. Gen. Laws ch. 260, § 2A. ("General Laws c. 260, § 2A, provides that actions of tort shall be commenced only within three years next 'after the cause of action accrues.'").  Tort claims accrue at the time of injury. See Frank Cooke, Inc. v. Hurwitz, 10 Mass. App. Ct. 99, 106 (1980) ("a cause of action in tort accrues at the time of the injury to the plaintiff").  Steven Surabian alleges in the Complaint that he appeared at the Clerk's hearing in North Carolina on July 15, 2009 and "showed evidence that proved that the recorded note and deed of trust were not what he signed as they not have the notary seal as the Notary indicated he would have done." Complaint at ¶ 16.  According to the allegations of the Complaint, Mr. Surabian was advised at the hearing that his evidence was not persuasive and that the trustee was authorized to move forward with the foreclosure.  Complaint at ¶ 18 and Exhibit N.  The plaintiffs' injury reasonably occurred when the court declined to accept his evidence about the allegedly fraudulent note.  The statute of limitations for the plaintiffs' tort-based claims therefore expired on July 15, 2012– three years after the entry of the Order authorizing the foreclosure of the plaintiffs' property. Complaint at Exhibit N.  The plaintiffs' Complaint was not filed until August 8, 2012 – more than three years after the entry of the Order authorizing the foreclosure of the property.  Complaint at Exhibit N and Exhibit W. To the extent that the plaintiffs contend that their injury occurred on the date of the foreclosure sale of August 5, 2009, the tort claims are still time barred as the Complaint was not filed until August 8, 2012.  As a result, the plaintiffs' Complaint should be dismissed because all of the claims contained therein are time barred.

---

[5] "Generally, a federal court in a diversity case applies the statute of limitations that would be applied by the forum state."  Stanley v. CF-VH Assoc., Inc., 956 F.Supp. 55, 57 (D.Mass. 1997).  Although the plaintiffs contend that this case is before the court on federal question jurisdiction, there are no federal claims or statutes at issue in the Complaint.  Defendants believe this is an error and that the parties are before this court based on the diversity of citizenship of the parties and the amount in controversy.

### E. The Complaint's Factual Allegations Fail to Meet the *Iqbal* Pleading Standard

In deciding a motion to dismiss under Rule 12(b)(6), the Court undertakes a two step analysis: "an inquiring court first must separate wheat from chaff; that is, the court must separate the complaint's factual allegations (which must be accepted as true) from its conclusory legal allegations (which need not be credited)." Morales-Cruz v. Univ. of Puerto Rico, 676 F.3d 220, 224 (1st Cir. 2012). Second, the Court "must determine whether the 'factual content . . . allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" Morales-Cruz, 676 F.3d at 224 (quoting Iqbal, 556 U.S. at 663).

The Court's first task, to separate the Complaint's factual allegations from its conclusory legal allegations, is simple. There are very few affirmative facts in the Complaint against Wells Fargo, Trustee and/or EMC. The Complaint contends that EMC sent a notice indicating that the plaintiff's loan was past due. Complaint at ¶¶'s 5, 7, 8 and 9. Beyond the sending of the default notices, there is no further mention of EMC in the Complaint. There are no allegations of wrong doing alleged against EMC and there is no indication of how the plaintiffs were damaged by the default notices that are found at Exhibits F and G of the Complaint. Likewise, there are no allegations of wrongdoing alleged against Wells Fargo, Trustee. Wells Fargo, Trustee is mentioned once in the Complaint in the paragraph that identifies them as a party. Complaint at p. 1. There is no further reference to Wells Fargo, Trustee in the entire Complaint.

The case caption further seeks relief for unlawful eviction but the word eviction does not appear even once in the Complaint. As the plaintiffs have failed to allege a single fact supporting the "unlawful eviction" from the Property, the claims fails as a matter of law.

Under Iqbal, the Court must dismiss this Complaint because it simply lacks facts demonstrating a plausible entitlement to relief against EMC or Wells Fargo, Trustee or any of the

13

other defendants for that matter. There is not a single factual allegation that the plaintiffs were harmed in any way by EMC or Wells Fargo, Trustee. The Court must therefore dismiss the Complaint in its entirety.

## F. The Plaintiff's Verified Complaint Fails To Allege Fraud With Sufficient Particularity As Required By Fed. R. Civ. P. 9(b) And Therefore Should Be Dismissed

According to the caption of plaintiffs' Verified Complaint, they claim that one or more of the defendants engaged in fraud that resulted in the foreclosure of their real property. *See* Complaint caption. There are no further allegations of fraud contained in the Complaint. Plaintiffs' failure to sufficiently plead fraud is fatal to any fraud claim they believe they asserted and dismissal is required by Fed. R. Civ. P. 9(b).

It is black letter law that a plaintiff must "satisfy the heightened pleading standard set by Fed. R. Civ. P. 9(b) for allegations of fraud." SEC v. Tambone, 550 F.3d 106, 118 (1st Cir. 2008). "Allegations in the form of mere conclusions, accusations, or speculation are not sufficient to meet Rule 9(b)'s particularity requirement without supporting facts surrounding the scheme to defraud or a basis for believing such a scheme existed." Id. "Thus, a complaint must make some step toward explaining how and why the statements made by the defendants were false and misleading when made." Id. at 52.

In the present case, the Verified Complaint contains no specific allegations of fraud. The plaintiffs do not set forth the identity of the party who made the allegedly fraudulent statements, or the time, location or circumstances of the specific fraudulent activity. The Verified Complaint is devoid of any specific allegations of who, how, when, where and what constituted the fraud. As a result, this Court should dismiss any fraud count that the plaintiffs believe they have asserted for failure to meet the pleading requirement of Rule 9(b).

14

### G. The Plaintiff's Have Not Sufficiently Pled A Claim For Emotional Distress

According to the caption of the plaintiffs' Complaint they are asserting a claim for emotional distress arising from the foreclosure of their property.  The words "emotional distress" appear twice in the complaint: once in the caption and again in the prayer for relief. It is unclear from the Complaint whether the plaintiffs intend to assert their emotional distress claim under Massachusetts law or North Carolina law but  ultimately that distinction is unimportant because the poorly pled emotional distress claim does not satisfy either state's law.[6]

To state a claim for intentional infliction of emotional distress under Massachusetts law, a plaintiff must allege facts plausibly suggesting "(1) that the actor intended to inflict emotional distress or that he knew or should have known that emotional distress was the likely result of his conduct; (2) that the conduct was extreme and outrageous, was beyond all possible bounds of decency and was utterly intolerable in a civilized community; (3) that the actions of the defendant were the cause of the plaintiff's distress; and (4) that the emotional distress sustained by the plaintiff was severe and of a nature that no reasonable man could be expected to endure it." Agis v. Howard Johnson Co., 371 Mass. 140, 143 (1976) (internal citations omitted).

 "The standard for making a claim of intentional infliction of emotional distress is very high." Doyle v. Hasbro, Inc., 103 F.3d 186, 195 (1st Cir. 1996) (applying Massachusetts law). Whether a plaintiff has alleged facts sufficient to meet this standard is a question of law for the court. Caputo v. Boston Edison Co., 924 F.2d 11, 14 (1st Cir. 1991) (applying Massachusetts law).

---

[6] Elements of intentional infliction of emotional distress and negligent infliction of emotional distress under North Carolina law are similar to the elements required under Massachusetts law.  To plead intentional infliction of emotional distress a plaintiff must show that 1.) defendants engaged in extreme and outrageous conduct;  2) intending to cause and actually causing, 3.) severe emotional distress.  Jolly v. Academy Collection Services, 400 F.Supp. 2d 851, 866 (M.D.N.C. 2005).  To plead a claim for negligent infliction of emotional distress, a plaintiff must plead and prove that defendants: 1.) negligently engaged in conduct; 2.) which would reasonably and foreseeably cause plaintiffs severe emotional distress; 3.) which did, in fact, cause severe emotional stress.  Id. at 868.

To plead the tort of negligent infliction of emotional distress under Massachusetts law, "a plaintiff must allege that (1) the defendant was negligent; (2) that she suffered emotional distress as a result of the defendant's negligence; (3) the emotional distress was caused by the defendant's negligence; (4) the plaintiff suffered physical harm manifested by objective symptomatology; and (5) a reasonable person would have suffered emotional distress under the same circumstances." Gouin v. Gouin, 249 F.Supp.2d 62, 74 (D. Mass. 2003).

The plaintiffs have not pled <u>any</u> of the elements of either of these torts. The Complaint is nothing more than a disjointed group of allegations lacking in any facts that would even suggest a viable claim for emotional distress under the law of the forum state or North Carolina law. Because the plaintiffs have failed to plead any of the needed facts to support a claim for emotional distress the claim should be dismissed.

## IV. CONCLUSION

For all of the reasons stated in this memorandum, the motion to dismiss of defendants Wells Fargo, Trustee and EMC should be granted and the Plaintiffs' Complaint should be dismissed.

>WELLS FARGO BANK, N.A., AS TRUSTEE
>FOR THE CERTIFICATEHOLDERS OF
>STRUCTURED ASSET MORTGAGE
>INVESTMENTS II INC., GREENPOINT MTA
>TRUST 2005-AR2, MORTGAGE PASS-
>THROUGH CERTIFICATES,
>SERIES 2005-AR2, EMC MORTGAGE
>CORPORATION,
>By its attorneys,
>
> */s/ Mary Ellen Manganelli*
>Mary Ellen Manganelli, BBO # 641658
>Jamie Kessler, BBO # 681867
>Bulkley, Richardson and Gelinas, LLP
>125 High Street

>Oliver Street Tower, 16th Floor
>Boston, MA  02110
>Tel: (617) 368-2500
>Fax: (617) 368-2525
>Email: mmanganelli@bulkley.com

Dated: June 28, 2013

## CERTIFICATE OF SERVICE

    I, Mary Ellen Manganelli, hereby certify that a true and correct copy of the foregoing document was served upon the parties via this Court's CM/ECF system or, if not registered on this Court's CM/ECF system, then via first class mail, postage prepaid, on June 28, 2013.

>*/s/ Mary Ellen Manganelli*
>Mary Ellen Manganelli

1539098v1

17